IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TYRA KIRKSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0115-WS-N |
| | ) |
| SCHINDLER ELEVATOR | ) |
| CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

ORDER

This matter comes before the Court on plaintiff's Motion to Reconsider Summary Judgment Order (doc. 119). The Motion has been briefed and is now ripe.

**I.    The Duty to Warn Claim and Summary Judgment.**

Plaintiff, Tyra Kirksey, brought this wrongful death action against defendants, Schindler Elevator Corporation and Sears, Roebuck and Co., after her 11-year old son, Jakobe Kirksey, fell to his death from a moving escalator handrail on the second floor of a Sears retail store in Mobile, Alabama in June 2014. It is undisputed that the escalator in question was manufactured and installed by Schindler in 1996-1997, and that Schindler was responsible for maintaining said escalator through the time of Jakobe's accident.

In the Complaint (doc. 1-1), Kirksey identified her theories of liability against Schindler as follows: (i) "Schindler manufactured the Escalator, and, at all relevant times, was under a duty to provide an escalator that was non-defective, safe, and suitable for all foreseeable public use" (Complaint, ¶ 7); (ii) "Schindler was responsible for maintenance on the Escalator and, at all relevant times, was under a duty to provide an escalator that was non-defective, safe, and suitable for all foreseeable public use" (*id.*, ¶ 8); and (iii) "[a]t all times the Defendants have known or should have known that there are available and reasonable safety measures that would prevent such accidents" but "failed to implement any such safety measures at the Store" (*id.*, ¶¶ 15-16). Nowhere in the Complaint did plaintiff allege or even allude to any claim against Schindler predicated on a theory of failure to warn Sears of the risk of falls and the need for additional

guarding; to the contrary, the Complaint is rife with allegations that both defendants knew or should have known of the risk of children and other riders falling from escalator handrails and the availability of safety measures that could prevent such accidents. (*Id.*, ¶¶ 12-15.)

Following the close of discovery, both Sears and Schindler filed motions for summary judgment that were the subject of exhaustive briefing, reaching approximately 150 pages in the aggregate. Sprinkled throughout Kirksey's 41-page principal brief on summary judgment were intermittent, cursory references to what she characterized as Schindler's duty to warn Sears and the public of the need for guarding on the escalator. (*See* doc. 71, at 13, 20, 27, 29.) The most cogent, specific recitation of this theory in plaintiff's summary judgment memorandum was as follows:

> "Apart from an ordinary AEMLD claim, Alabama law also allows a plaintiff to make a 'failure to warn' claim as a matter of common-law negligence, under the AEMLD, or both. … If a manufacturer knows of a non-obvious danger, the manufacturer has a duty to provide an adequate warning. … No later than March, 1995, Schindler knew 'guardrails should be mandatory where there are open atriums or other spaces.' Thereafter, not only did Schindler fail to provide such guardrails, Schindler failed to provide any warning to Sears or the public. This is an actionable failure to warn."

(Doc. 71, at 29 (citations omitted).) Plaintiff appeared to raise this issue as an afterthought, judging by her barebones treatment of it. In response, defendants addressed the merits of this putative duty to warn claim in approximately one page of their reply brief by arguing, *inter alia*, that there can be no duty to warn here because such a duty is triggered under Alabama law only where the supplier has "no reason to believe" the user will realize the dangerous condition of the product. (Doc. 72, at 9.) Plaintiff did not request an opportunity to submit a sur-reply or otherwise to be heard on the duty-to-warn issue via additional briefing.

In a 42-page Order (doc. 85) entered on June 7, 2016, the Court sorted through and resolved the parties' myriad summary judgment issues and arguments. With regard to Kirksey's failure-to-warn theory against Schindler, the June 7 Order cited Alabama authority limiting a manufacturer's duty to warn to circumstances in which it has no reason to believe the user will realize the product's dangerous condition.[1] The June 7 Order then stated as follows: "Plaintiff's

---

[1] *See Abney v. Crosman Corp.*, 919 So.2d 289, 294 (Ala. 2005) (manufacturer has duty to warn "only when [it] has 'no reason to believe that the user will realize the 'dangerous condition' of the product ….' [T]he objective of placing a duty to warn on the manufacturer … (Continued)

extensive summary judgment evidence reflects that Sears was well aware of the risk that its customers might fall over the side of the escalator; therefore, Schindler had no legal obligation to provide a warning of that known risk to Sears." (Doc. 85, at 30-31.) On that basis, the June 7 Order concluded that "Kirksey's failure-to-warn claim against Schindler as manufacturer/ installer of the escalator appears both factually and legally unfounded," and granted Schindler's summary judgment motion as to that claim. (*Id.*)

Nearly two months later, Kirksey filed her Motion to Reconsider relating to that narrow, singular ruling dismissing her claim against Schindler for failure to warn Sears of the fall risk associated with the escalator and the need for additional guarding. Kirksey argues that the June 7 Order misapprehended the temporal scope of her failure-to-warn claim and that defendants are wrongfully attempting to have their cake and eat it too, because Sears now denies any knowledge of the risk of falls and the need for guarding even though plaintiff's failure-to-warn claim against Schindler was dismissed because of Sears' ostensible knowledge on those very topics.

**II.    Legal Standard for Motion to Reconsider.**

Motions for reconsideration of an interlocutory order are a disfavored, extraordinary remedy that must be employed sparingly. *See, e.g., IBERIABANK v. Case Construction, LLC*, 2015 WL 5457889, *2 (S.D. Ala. Sept. 16, 2015) ("Motions to reconsider are disfavored in federal court and are granted only in narrowly circumscribed circumstances.").[2] The Supreme Court has confirmed that motions to reconsider "may not be used to relitigate old matters, or to

---

of a product is to acquaint the user with a danger of which he is not aware.") (citation omitted); *Ex parte Chevron Chemical Co.*, 720 So.2d 922, 925 (Ala. 1998) (manufacturer's duty to warn is confined to "those dangers which the owner or user would not be aware of under the particular circumstances of his use of the product") (citation omitted).

[2]    *See also Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1246 (S.D. Ala. 2008) ("[I]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly.") (citations omitted); *Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration, vacatur, alteration or amendment as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper.").

raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d 570 (2008) (citation omitted). As a general proposition, motions to reconsider are permissible "only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1247 (S.D. Ala. 2008) (citations and internal punctuation omitted); *see also United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) ("The only grounds for granting a [Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.") (citation and internal marks omitted).

Such motions are particularly suspect where, as here, the movant is attempting to bolster a previously-rejected argument with points of elaboration that were available earlier but were not raised. *See, e.g., Kight v. IPD Printing & Distributing, Inc.*, 427 Fed.Appx. 753, 755 (11th Cir. May 24, 2011) (motion for reconsideration properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment").[3] Simply put, the Federal Rules of Civil Procedure do not afford a party against whom an issue has been adversely decided a second bite at the apple under the guise of a motion to reconsider. *See, e.g., American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to afford a litigant "two bites at the apple").

Notwithstanding the foregoing, plaintiff correctly identifies Rule 54(b) as the legal basis for her Motion to Reconsider. *See* Rule 54(b), Fed.R.Civ.P. (providing that an order "that adjudicates fewer than all the claims … does not end the action as to any of the claims … and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Plaintiff is also correct that this Court possesses discretion to reconsider its interlocutory summary judgment ruling under appropriate circumstances. *See, e.g.,*

---

[3] *See also Gipson v. Mattox*, 511 F. Supp.2d 1182, 1185 (S.D. Ala. 2007) ("Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing arguments considered and rejected in the underlying order."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) (motions to reconsider "do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

*Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010) ("It is permissible for a district court to rescind its own interlocutory order."); *In re Taira Lynn Ltd. No. 7*, 2015 WL 728222, *2 (S.D. Ala. Feb. 18, 2015) ("The grant or denial of a motion to reconsider is left to the discretion of the trial court.") (citations omitted). But merely because a district court can reconsider an interlocutory order does not mean that it should do so in a particular case. Moreover, notwithstanding plaintiff's argument for liberal application of the reconsideration mechanism, the law is clear that the stringent limitations identified *supra* with respect to motions filed under Rules 59(e) or 60(b) apply with equal force in the Rule 54(b) context. *See, e.g., Maldonado v. Snead*, 168 Fed.Appx. 373, 386-87 (11th Cir. Feb. 23, 2006) (explaining that "we see no reason to apply a different standard when the party seeks reconsideration of a non-final order" pursuant to Rule 54(b) "than when the party seeks reconsideration of a final judgment" pursuant to Rule 60(b)). Even in the context of an interlocutory order, reconsideration remains an extraordinary remedy that may not be cavalierly invoked merely because a litigant armed with the clarifying aid of hindsight now wishes to supplement arguments previously considered and rejected during the summary judgment briefing process.

**III.   Analysis.**

After careful consideration of the parties' briefing on the Motion to Reconsider, the underlying summary judgment order, and the arguments presented by the parties on summary judgment, the Court finds that plaintiff's Motion to Reconsider is not well taken for at least five distinct reasons.

***A.   Failure to Warn against Schindler Was Not Pleaded in the Complaint.***

First, it is, at best, questionable whether the subject failure-to-warn claim was ever properly joined in this case. As noted, nowhere in the pleadings did Kirksey ever identify or even allude to a theory of liability against defendant Schindler for failing to warn defendant Sears about the risk of falls from the escalator and the need for guarding. Nothing in the well-pleaded allegations of the Complaint could or would reasonably have placed Schindler on notice that Kirksey sought to hold it liable for failing to warn its co-defendant about potential problems and corrective measures for the escalator. Such a concept is simply not embodied in plaintiff's

pleading.[4] Although Kirksey later raised this duty-to-warn theory against Schindler in her summary judgment brief, it is hornbook law that a plaintiff may not amend her complaint via summary judgment argument. *See, e.g., GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").[5]

### B. Plaintiff Never Articulated the Nature and Parameters of this Claim.

Second, plaintiff's Motion to Reconsider repeatedly takes the June 7 Order to task on the ground that this Court failed to understand or appreciate certain aspects of the failure-to-warn claim. In particular, plaintiff maintains that "[t]he Court's finding misapprehends the 'failure to warn' claim" (doc. 120, at 2); balks that "[t]he Court's finding fails to recognize the significance of the timing of the failure to warn versus the timing of Sears' alleged knowledge" (*id.* at 5); and insists that "[t]he relevant time period for Plaintiff's failure to warn claim is 1996-97," but that "[i]t is clear error or mistake for the Court to dismiss the 1996-97 failure to warn claim based on Sears' post-2005 knowledge" (*id.* at 10-11). Significantly, Kirksey points to no excerpt from her

---

[4] Under the circumstances, it is not at all surprising that Schindler's principal summary judgment brief did not address this failure-to-warn claim because, again, nothing in the Complaint would have placed Schindler on notice that Kirksey was pursuing such a theory. Even in the Rule 26(f) Report, plaintiff made no mention of any claim predicated on Schindler's alleged failure to warn Sears, but instead couched her claims exclusively in language "that the escalator was an unreasonable safety hazard, which is well known within the escalator and retail industries," and that Jakobe's fall could have been "prevented through reasonable safety measures, which Defendants know about but have failed and/or refused to install." (Doc. 24, at 2.) Thus, in both her pleading and her Rule 26(f) Report narrative, plaintiff made no distinction between the quantum of knowledge held by Schindler and that held by Sears during the relevant time period, but rather pleaded them as equal in relevant respects.

[5] A byproduct of plaintiff's belated injection of this claim via her summary judgment brief was that the Court did not receive the benefit of thorough briefing on that issue. Again, plaintiff raised it for the first time in her opposition brief and Schindler responded in its reply. Both sets of arguments were little more than skeletal, superficial detours, given the myriad other issues that garnered substantially more in-depth treatment in the summary judgment briefs. Thus, as a direct result of Kirksey unveiling the broad outlines of a duty-to-warn claim for the first time in her principal brief on summary judgment, the Court was given precious little help by the parties to resolve the issue.

Complaint or even her summary judgment brief that would have apprised the Court of these specific contours of her purported failure-to-warn claim. To the extent it was set forth at all, plaintiff's theory that Schindler wrongfully failed to warn Sears was set forth on summary judgment in only the broadest and vaguest of brush strokes. For example, although plaintiff now sharply criticizes the June 7 Order for not recognizing that the relevant time period is 1996 to 1997, she fails to point to any portion of any heretofore-filed pleading or brief in which she ever delineated the centrality of the 1996-1997 timeframe to her failure-to-warn claim against Schindler. Indeed, her summary judgment arguments were persistently ambiguous as to timeframe. *See* doc. 71, at 27 ("Not only did [Schindler] fail to install guardrails ***at any time between installation in 1997 and Jakobe's fall***, it ***never*** even bothered to inform, advise, recommend, or warn Sears (or the public) that such safety devices were needed.") (emphasis added), 29 ("***Thereafter***, not only did Schindler fail to provide such guardrails, Schindler failed to provide any warning to Sears or the public.") (emphasis added).

The point is that it is improper to use a motion to reconsider to relitigate previously-decided legal issues based on details and specifications about a claim that the plaintiff never clearly delineated prior to filing the motion to reconsider. Of course, it goes without saying that a litigant cannot morph a dismissed claim into something else in order to seek reconsideration of the dismissal ruling. And even if plaintiff had always viewed her failure-to-warn claim as being focused exclusively on the 1996-1997 timeframe, this detail was neither known to nor knowable by this Court on the negligible record and fragmentary arguments plaintiff presented on summary judgment. Courts are not mind readers. A motion to reconsider is not the proper vehicle for fleshing out a claim for the very first time, much less for faulting a court for not unilaterally filling in the blanks earlier. In short, the undersigned cannot and does not find the requisite clear error or manifest injustice that might warrant reconsideration based on the June 7 Order's failure to recognize parameters of Kirksey's failure-to-warn claim that plaintiff never articulated on the record until now.

        C.      ***Arguments for Reconsideration Were Available but Not Asserted Earlier.***

Third, reconsideration is inappropriate where, as here, the arguments undergirding the Motion to Reconsider could have been asserted by Kirksey in briefing Schindler's Motion for Summary Judgment, but were not. For instance, plaintiff neglected to point out in her summary judgment memorandum that her failure-to-warn claim against Schindler was rooted solely in the

1996-1997 period, that Schindler's knowledge was superior to Sears' during that period, that Sears denied any knowledge of the need for additional guarding prior to 2005, that "Schindler's actionable failure to warn occurred <u>during</u> the store expansion project, when a different store design could have been chosen" (doc. 120, at 4), that "the proper time to have warned Sears would have been in 1996-97, when Sears could have implemented a safe design to begin with and never would need to retrofit" (*id.* at 10 n.2), and that during the relevant time "Schindler knew of the history of falls, the dangers of open-air atrium installations, and the need for guarding" but "Sears did not (or so it says)" (*id.* at 10). These arguments form the linchpin of Kirksey's Motion to Reconsider, yet they were not articulated in any meaningful way (if they were even mentioned at all) in her summary judgment briefing. All of them could have been.

That circumstance weighs heavily against reconsideration. After all, "[a] party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions." *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (citation and internal quotation marks omitted). A motion to reconsider "should not be used to raise arguments which could, and should, have been made before the judgment was issued;" and denial of such a motion "is especially soundly exercised when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation." *Id.* (citation omitted); *see also Wilchombe v. TeeVee Tunes, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (similar). Such is the case here.[6]

---

[6] Kirksey suggests that part of the impetus for her Motion to Reconsider is that "[i]n preparing the Joint Pretrial Document, based on the Court's summary judgment order, Plaintiff requested Sears to stipulate that it had knowledge of the risk of falls and the need for guarding. Sears refused." (Doc. 120, at 2.) To the extent that Kirksey would assert that her Motion is based on previously unavailable arguments because Sears did not refuse the requested stipulation until after the summary judgment order had been entered, such a contention is unpersuasive. Kirksey does not indicate, and makes no showing, that Sears has equivocated or adopted inconsistent positions about what it knew and when it knew it at various points in the case. There is no reason to believe that Sears' declination of the requested stipulation came as a surprise to plaintiff, or was somehow at odds with Sears' previous representations and litigation positions. Stated differently, Sears' refusal to stipulate to knowledge of the risk of falls and need for guarding does not constitute a change in circumstances unlocking previously unavailable arguments that might justify plaintiff's Motion to Reconsider.

### D. *Plaintiff Contradicts Her Own Version of the Facts.*

Fourth, plaintiff's present stance (*i.e.*, that Sears lacked knowledge about the risk of falls or the need for guarding, thereby giving rise to a duty to warn on Schindler's part) for reconsideration purposes suffers from an inherent flaw insofar as it conflicts with plaintiff's factual allegations and summary judgment evidence that Sears possessed such knowledge. For example, in her Motion to Reconsider, Kirksey stakes herself to a position that "Schindler's knowledge has always been superior to Sears'." (Doc. 120, at 5.) But she repeatedly has said the opposite in these proceedings.[7] Indeed, in her pleadings and summary judgment filings, plaintiff repeatedly, consistently embraced a version of the facts in which Sears always had knowledge (commensurate with that of Schindler) at relevant times of the risk of falling and the need for guarding. Until now, plaintiff never advocated a factual narrative in which Sears lacked knowledge of the risk of falls and the need for guarding until 2005. The trouble is that on summary judgment, plaintiffs may not flip-flop on the facts based on the expedience of the moment, but are rather bound by their version of the facts.[8] Besides, even if she were permitted to pivot 180 degrees now, plaintiff has identified no evidence that Sears lacked the requisite

---

[7] In the Complaint, plaintiff alleged that "[t]he Defendants at all times have been or should have been aware that children … are thereby subject to a risk of falling;" that "[a]t all times it was foreseeable to the Defendants that escalator riders – especially children – will interact with the sides and handrails of an escalator in a way that can cause the rider to fall over the handrail;" and that "[a]t all times the Defendants have known or should have known that there are available and reasonable safety measures that would prevent such accidents." (Complaint, ¶¶ 12, 13, 15.) Thus, plaintiff's narrative in the Complaint equated Sears' knowledge and Schindler's knowledge. On summary judgment, plaintiff submitted facts and made arguments that "[m]uch like Schindler, Sears also has actual knowledge of falls from other Sears escalators in the recent years pre-dating Jakobe's fall" (doc. 71, at 14); that "the relevant issue is whether Sears and/or Schindler had actual or constructive knowledge to put Sears and Schindler on notice of the risk posed by escalators of this type in general. Clearly they did" (*id.* at 21); and that "Sears' assertion of 'no knowledge' is not credible and is refuted by the admissions of Sears' own corporate representative" (*id.*, at 24).

[8] *See generally Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("[W]e do not … pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant. Instead, when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*.") (footnote omitted).

knowledge and her failure to raise the argument earlier precludes her from doing so via Motion to Reconsider.

  E.  *Request for Reconsideration is Problematic on the Merits.*

  Fifth, even if plaintiff's Motion to Reconsider were procedurally proper (which it is not for the reasons set forth *supra*), it would nonetheless be extraordinarily problematic on the merits. In order for a duty to warn to arise under Alabama law, Schindler must have had "no reason to believe" that Sears lacked awareness of the risk of falling from the escalator. *See Ex parte Chevron Chemical Co.*, 720 So.2d 922, 925 (Ala. 1998) ("We have held that the duty to warn contemplated by § 388(c) is triggered only when the supplier has 'no reason to believe' that the user will realize the 'dangerous condition' of the product …."); *Speights v. Hertz Corp.*, 2013 WL 4804284, *4 (N.D. Ala. Sept. 9, 2013) (rejecting duty-to-warn claim because "plaintiff's Complaint alleges the compact car was dangerous because the seat-belt would not fit around the decedent" but "defendant had no reason to believe that decedent would not or could not realize that his seat belt would not fit"); *Restatement (Second) of Torts* § 388 (1965) (liability for failure to warn arises only if the supplier "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition"). In neither her summary judgment brief nor her Motion to Reconsider does plaintiff identify record evidence supporting a reasonable inference that Schindler had no reason to believe Sears was cognizant of the risk of falling over the side of the escalator during the 1996-1997 timeframe.

  Another merits-related problem with plaintiff's failure-to-warn claim concerns the issue of causation. As framed in her Motion to Reconsider, Kirksey's theory is that, even though Sears became aware of the risk of falls no later than 2005 based on occurrence of escalator falls at its other retail stores, Schindler is liable for Jakobe's fall in June 2014 because it failed to warn Sears of the dangerous condition in 1996-1997. From a causation standpoint, such an argument makes no sense. Plaintiff is going to present evidence to the jury that Sears knew for nearly a decade (or longer) before Jakobe's accident that its escalator was unreasonably dangerous and that safety devices were available to protect against the risk of people (and especially children) falling over the side of the handrail into the open atrium. Yet plaintiff also wants to submit a claim to the jury that Schindler is liable for the accident because it failed to warn Sears of the danger two decades earlier, even though her evidence is that Sears knew of the danger for many years before Jakobe fell. It does not appear that any representative of Sears has ever blamed

Schindler for the escalator layout or said that Sears would have done something different had Schindler provided a timely warning. Certainly, Sears has asserted no crossclaims against Schindler to that effect. On this record, no reasonable jury could find the requisite causal nexus between Schindler's alleged failure to warn Sears in 1996-97 and Jakobe's fatal accident in June 2014.[9]

## IV.   Conclusion.

For all of the foregoing reasons, Plaintiff's Motion to Reconsider Summary Judgment Order (doc. 119) is **denied**.[10]

DONE and ORDERED this 28th day of October, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] What appears to be missing here is any evidence, any indication, any reason to believe that Sears or its architect would have changed the design of the store, eliminated the open atrium concept, or installed safety devices to protect against falls over handrails if only Schindler had sounded the alarm when the escalator was installed. Plaintiff posits that "Sears was lulled by Schindler into believing that it had chosen a safe design" (doc. 134, at 6), but identifies not a scrap of evidence that might support such a conclusion. On such a nonexistent showing, it would amount to impermissible speculation for the jury to credit this theory of liability at trial.

[10] In the alternative to allowing her to pursue a claim against Schindler for failing to warn Sears in 1996-1997 of the risk of falls from the subject escalator, Kirksey asks that the Court enter a finding, pursuant to doctrines of law of the case or direct estoppel, that Sears is barred from contesting at trial its knowledge of the history of falls, the risk or danger of falls, or the need for guarding. The Court declines this invitation. The cited doctrines have no application here because (i) the undersigned has never made a definitive finding on the disputed factual question of the state of Sears' knowledge at any particular time; (ii) Sears has made no representations or arguments to this Court that would operate to estop it from contesting knowledge of the risk of falls at the relevant times; and (iii) as addressed *supra*, there were multiple valid grounds for granting summary judgment on the failure-to-warn claim separate and apart from what Sears may have known and what plaintiff inaccurately terms "the Court's summary judgment finding of Sears' knowledge" (doc. 120, at 2).